Good morning, your honors. May it please the court, Joe McMillan on behalf of the plaintiff and appellant Keith McIver. I'd like to reserve two minutes for rebuttal. This appeal in this case is really all about what is fair and right and equitable under the law. Mr. McIver appealed the dismissal of his claim for breach of fiduciary duty and equitable relief. That is the focus of his appeal. He also appealed the plan benefit claim, but the fiduciary duty is really the focus. So this court is really sitting in equity, judging what is equitable to do here. And with that in mind, these are the key undisputed facts that the case that the court should consider when deciding what is equitable. Bonnie McIver died after a long bout with stage four liver cirrhosis. Because of the defendant's careless conduct, her husband, Keith McIver, was left without life insurance coverage on her for which he had paid. Mr. McIver worked for Boeing for 31 years. About 20 years before Ms. McIver died, they enrolled in the Plans Group Life Insurance, which was funded by MetLife, when they were married. Shortly before she died, the McIvers divorced Amia Kably after 28 years of marriage. Mr. McIver diligently paid the premiums to Boeing for this group life insurance for decades, both before and then also after the divorce. Unknown to Mr. McIver, under the policy's terms, Mr. McIver's life insurance had ended when they divorced. That's what the defendant's contention is. We have some counter-contentions, but that's what their contention is. Because only his dependents are eligible for the group coverage. Although Mr. McIver properly notified the Boeing defendants of his divorce via Boeing Total Access website, which is what the plan required, Boeing and MetLife continued to take the dependent life premiums without verifying Ms. McIver's eligibility. Counsel, when I read this, it seemed to me that this case really turns on that point you just made. Did Mr. McIver indeed appropriately or properly notify Boeing of his divorce? There appears to be some information in the record which suggests that that was not the case. Yes, that's a good point, but we believe that he did follow the plan's requirements. That's outlined on page 17 of our reply brief. It has all of our arguments on that. He sent a quadro notice to the Boeing Total Access Quadro Division, which is apparently not the same as the Boeing Total Access. It had misinformation that said he was divorced when he wasn't. It said his divorce was April 2019. It wasn't until January 2020. Correct. I assume your position is if it wasn't actual compliance with the policy, it was substantial compliance or it was enough to put them on notice. It seemed to me that there was a real question in there whether he had actually notified them properly. That's not our position. I believe that he did notify them properly. You are correct that he said he divorced on April 2019. That's what it said in the quadro. He petitioned for the divorce in June of 2019. The divorce was final. The judgment was entered in January of 2020. He was legally separated at that time. He mistakenly said he was divorced, but he still told them that he was divorced. He got the dates wrong. There's no plan requirement that it not be in a quadro. It was to Boeing Total Access. He sent a quadro through the Boeing Total Access website, which is what the summary plan description required. Now, the policy is actually very ambiguous. It just says you have a duty to notify. It doesn't say who to notify. Under the policy, he couldn't have possibly complied with that requirement because it doesn't say who to notify. But they were planned documents that added a little more information and do not appear to conflict with the policy. It would seem to be an appropriate supplement to the policy. Well, the summary plan description is trumped by the policy, but I agree with you. Yes, the summary plan description does add that you should notify Boeing Service Center through the Boeing Total Access website, and that is what he did. Let me ask you, is a legal separation a change of status that would have then alerted Boeing and the Boeing defendants that there had been this change in marital status? A legal separation is a change in marital status. You're not actually divorced. Would it then terminate the dependency status? I'm not sure I understand. Well, so the provisions that we're talking about, we're talking about a dependent, and a dependent includes a lawful spouse. So once they're divorced, they're no longer, there no longer is this dependent relationship. But once there's legal separation, does that impact whether or not someone's a dependent? Okay, I think, yeah, I get your point now. And I think you have to be divorced before your dependency status changes, but it's still a marital status change. But in your case, you're arguing that once the company and the administrators were aware of this legal separation, then they would have been able to figure out that, well, after legal separation is a divorce, and then with the quadro coming thereafter, then that would have been enough? That is correct, but not only that, he mistakenly said in the quadro, which was the notice, that he divorced. He didn't, apparently didn't understand the difference, but he said he divorced. So he told them that he divorced. He was wrong at that time, but he told them that he did. So that really put them on notice that he was divorced, and they should have been saying, hey, we have a potential ineligible plan participant here, and we should be following our duties under the plan. But if they, so if they had stopped deducting premiums after they received the quadro notice, and Mr. McIver and his wife were not actually divorced, that you would have sued them then as well? I mean, then there would still be a problem. They were deducting premiums from somebody who was still eligible for coverage. Right. Or they were stopping, excuse me, stopped deducting premiums for someone who was eligible. Yeah, I think our position is that they were on notice of the divorce through the proper channels. He made a mistake and said he was divorced when he really wasn't, but at that time, their duties under the plan were triggered, and the duties were Boeing had a duty on a, not Boeing, sorry, MetLife had a duty on a daily basis to account for premiums, to verify that the premiums that they were taking were correct. So they would have, if they would have investigated, and the Boeing defendants have the duty to make eligibility decisions, so if they would have investigated at that point when they became on notice of the divorce, even though it wasn't divorced yet, they would have talked to him and learned, okay, yeah, they're not actually divorced yet, but they're going to be divorced soon. He's already petitioned for divorce. It just hasn't been a final judgment entered yet. You're not asserting that there's a requirement for the administrator of the fiduciary to, on a daily basis, determine whether or not all of its employers are eligible for the benefits that they're receiving? I would say that, I don't know if you have to, I mean, the language of the plan is on a day-to-day basis, MetLife has a duty to account for premiums, and so that means, and Boeing's a very large company, probably close to 200,000 employees, something like that, maybe not quite that many, but it's more than a mom-and-pop shop with 20 employees. So you're suggesting that MetLife and Boeing had a duty to, every day, review the policy choices of their employees and decide if they were eligible or if they were receiving premiums correctly? No, I'm not saying that. I'm saying that under the case law, for instance, Shields, you have a duty to make a decision within a reasonably approximate time after taking those premiums and being on notice of the divorce. And I think the language of Skelton was that you have a duty to continuously monitor and verify, so I don't know if you would have to do it on a day-to-day basis, but just putting your head in the sand by doing bulk billing so you don't even know who the premiums are coming from. But didn't they delegate eligibility to Boeing so MetLife receives the premiums, and then they step back in when there's a claim and they determine whether the claim is payable? I think that's partly correct because MetLife's duty under the plan, they were the service representative, and delegated to them was the duty to make benefit decisions. But in that same paragraph of the plan, it also says you have a duty to account for premiums on a day-to-day basis. But what does that mean? I mean, it could mean a lot of other things. It could just mean to account for the fact that premiums have arrived and have been properly deposited in an account, as opposed to now you're going to check every day and make sure all, you know, thousands of employees have paid their premiums properly. Well, they drafted the documents. If they drafted ambiguous documents, that's, you know, it's their duty to draft clear documents. Let me ask you, as to representations by the fiduciaries, I believe part of your theory is that whenever the fiduciaries accepted these premium payments and processed them, that there was a representation of sorts. Is that right? That is one of our theories. I think the Northern District of California decision in Harris said that just accepting premiums, relying on the McRavy case from the Fourth Circuit alone, is in effect a misrepresentation of coverage. But I think our stronger arguments are the Shields and Skelton decisions that says if you have planned duties ascribed to you to determine eligibility, then you have to make a decision about the right to take premiums that you're taking within a reasonable time of taking those premiums. And then Skelton is kind of that too, but it's going on to more of the procedures. But those are more questions in terms of enrollment on the front end here. We're not talking about that. We're talking about actually terminating one form of benefit, this life insurance policy, and then converting it to another, correct? No, not totally, because the Shields decision relied on McRavy, and it quoted it. And McRavy was a situation seven years later after initial enrollment, and it talks about that. And then the Skelton... But neither Shields or Skelton dealt with the kind of situation that you're referring to. Is it McRavy? McRavy. Yeah. But going back to my initial question about the representation, so did you also assert that there were express representations made by Boeing with respect to coverage? We did not assert that. We're basically going on the premium deductions and then the planned duties. All right. Thank you. I have a question about the allegations in the complaint. My understanding is that the allegation is that the plan administrator had discretionary authority over eligibility and benefit determinations and then delegated that authority to Boeing, and then Boeing delegated a piece of that authority regarding benefits to MetLife. My question is, if a delegation has happened, does the delegating party and the party receiving the delegation both have discretionary authority, or does all of the discretionary authority move with the delegation? I believe that the plan administrator who delegated authority to Boeing would still retain that ultimate authority. I think they both had authority. Do you have legal authority for that? I don't. You're really close to your two minutes. Did you want to reserve? Yes. Okay. Thank you. Are we hearing from Mr. Matheson first or Mr. Hess? Good morning. I'm Robert Hess, and I represent Metropolitan Life Insurance Company. I'll jump right into the notice issue that the court raised. First of all, MetLife does not agree that Mr. McIver gave proper notice of the divorce to any defendant, but even if he had given notice to the Boeing defendants, he specifically alleges that MetLife not only did not know about the divorce, but had no reason or ability to know about the divorce. I have a question about that. Was MetLife involved in the splitting of the retirement account? In the quadro process? Not at all. That involved a pension plan. Okay. Right. So the quadro related to the pension plan. We're dealing with the life plan here. The court should hold Mr. McIver accountable for his actual allegations in this complaint. In this complaint, he does not allege that MetLife knew about the divorce. The only case that was cited by the McIver brief relating to imputing knowledge was the Salyers case, and in that case, the court found an agency relationship between MetLife and the employer that doesn't exist here. In Salyers, most importantly, the plan delegated fiduciary authority and control over eligibility to MetLife under the terms of that plan. That's not the case here. The plan here does not give MetLife that authority or control, and it was based on an apparent authority that the employer was acting on MetLife's behalf by which this court found that the knowledge of the employer was imputed to MetLife. Those facts simply don't exist here. Turning to the breach of fiduciary duty claim. Mr. McIver points to two alleged fiduciary duties in support of that claim. One relates to premium collections, and the other relates to eligibility determinations. On the premium collection issue, it's well established that in order to support a viable breach of fiduciary duty claim, the alleged wrongful conduct must occur during the performance of a fiduciary function, and it's that touchstone of fiduciary function that is central to the evaluation of a fiduciary's role. You can have a fiduciary under ERISA, but that doesn't mean that any and all conduct by that entity can give rise to fiduciary liability. With respect to the collection of premium allegations, that's exactly what we have here, where MetLife's mere receipt of premiums delivered to it in bulk billing fashion did not involve the requisite discretionary control or authority sufficient to support or constitute a fiduciary function. MetLife wasn't involved in deciding when or where or how to collect the premiums, and even in the cases cited by McIver, including Skelton v. Radisson, courts have acknowledged that an insurer's mere receipt of premiums does not constitute a fiduciary function. Can I move you to the denial of benefits part of this? So the allegation in the complaint, to the extent I understand it, is that MetLife made the initial determination to deny benefits, and then there was a challenge to that in an appellate process, essentially an administrative review process, and then I believe Boeing, and maybe Boeing and the plan administrator, gave direction to MetLife about a final denial decision, that you should deny this because the plan doesn't cover this. At that moment, does MetLife have the ability to ignore Boeing's direction? I'm just trying to figure out, in that moment, who actually has decision-making authority? This relates to my delegation question, and once a delegation happens, do multiple people have authority? What's happening in that moment? With respect to responding to the claim for life benefits, MetLife has the authority to respond to that claim. So the eligibility comes into play because there was a question, was she eligible for coverage as a former spouse? And the answer is no, but MetLife simply applied the fact that the McIvers were divorced, and that fact came not from a statement regarding insurability that would trigger the incontestability clause, as McIver alleges. That fact came from the divorce decree and the death certificate, and based on that fact applied to the plain terms of the plan, which say that a former spouse is not a dependent, MetLife denied the claim on that basis. I'm not sure you're getting at my question. What if Boeing, after the administrative challenge process, had said, you know, it's a long-time employee and we feel bad for the situation, and we did collect the premiums, so pay this. Would MetLife have to do that? I don't believe so. I believe the authority to deny or respond to the claim lies with the claims administrator, which is MetLife, in response to the claim. But getting back to the incontestability clause that I just touched upon, again, plaintiff's argument that that clause is triggered here has no merit, and they made the exact same argument in a case plaintiff's counsel filed in Pennsylvania, Staropoli v. MetLife, where the district court and then the Third Circuit Court of Appeals soundly rejected it, and this court should do so as well. Wasn't the underlying reasoning for that that there was this automatically generated kind of acknowledgement of the receipt of certain papers or certain notice? And so there was a question about notice itself, and at the motion for summary judgment stage, the court found that there was no showing that the insurance company had been notified, that somebody had read it, that there would be somebody that would have been able to process this. I believe with respect to the Staropoli case and the incontestability clause, no, it was the same issue that that... Oh, okay, incontestability, okay. Okay. Getting back to the eligibility issues and allegations raised by plaintiff, this plan does not confer to MetLife fiduciary responsibility or authority to determine eligibility, and that's why this case is distinguishable from Shields and Skelton and so many of the other cases plaintiff relies upon, where the plan conferred such authority to the insurer. That isn't the case here, and plaintiff has not alleged otherwise. Plaintiff instead argues that MetLife assumed discretionary control and authority over making eligibility decisions, but that argument is based on the fact that MetLife in its role as a claims administrator denied the claim because an ex-spouse is not a dependent. It does not impose a basis, or I should say it is not a basis to impose upon MetLife a pre-claim fiduciary responsibility to determine eligibility and to verify eligibility. What about McIver's argument that the policies say that MetLife has ability to... Excuse me, the responsibility to account for the premiums day-to-day. What is that permission about? Sorry, that's a misreading of the summary plan description. The summary plan description says MetLife, as a claims administrator, shall be responsible for certain day-to-day activities of the plan. It doesn't say day-to-day accounting of premiums. It then includes accounting for premiums, but under the circumstances of this case, that's not a fiduciary function. Remember, this case isn't about a mishandling of assets, that MetLife did something wrong with the premiums once received. The focus of plaintiff's premium collection allegations is an alleged wrongful decision in the first instance to collect those benefits, not MetLife's, after the fact, receipt of those benefits. I'll wrap up here. In sum, plaintiff's claims against MetLife fail as a matter of law. With respect to the claim for plan benefits, the plain terms of the plan say that an ex-spouse is not covered, and MetLife was right to deny the claim on that basis. With respect to the breach of fiduciary duty claim, plaintiff failed to adequately allege that MetLife engaged in and performed a remediable wrong, that is, that while performing a fiduciary function, MetLife engaged in wrongful conduct. And under those circumstances, Judge Carter correctly dismissed the claims against MetLife, and this Court should affirm that decision. Thank you. Thank you. Mr. Matheson, you have seven minutes. May it please the Court. Eric Matheson on behalf of defendants, the Boeing Company, and the Employee Benefits Plans Committee. And, Your Honors, I'd like to talk about first your question, well, I want to talk about the notice issue. It's a little bit different than the questions you've asked, but I'll circle back to that in a minute, because one of the things that has been overlooked by, I think on purpose, by Mr. McIver is he did not comply in multiple ways. He did not comply with the requirements of the summary plan description and the policy in providing notice. You touched on one of them, whether the quadro submission to the quadro service entity was appropriate. But the other one, that there is absolutely no question and absolutely no allegation that he did, is he had another change in status. So there was a legal separation that he put on the plan on notice through his quadro submission. There was another legal change in status when the actual divorce took place. That didn't occur until January of 2020. So Mike, when did the retirement account separation happen? When was it split between the two parties? Because we're based on their pleadings, they don't identify a specific date, but it was submitted to the quadro service group in or about September. And what we understand, and I think there's no dispute, is that that took place sometime shortly thereafter, but before the actual divorce, yes. I guess that was my question in terms of even if the plaintiff didn't sort of do everything exactly right, if Boeing had sort of practical notice anyways, evidenced by the fact that you were splitting retirement accounts and you're only going to do that when marital status changes. It suggests that based upon the, so the quadro was the, you know, it's a domestics relations order from the state court, and it indicated that that was to be done prior to the dissolution of the marriage. But let me continue about the, what is significant about the fact that undisputedly, and there's no allegations, that he had a, there was a, again, there was another legal change of status when the divorce actually took place in January of 2020. At that point, the only place that he would have had any reason to submit that to is where the plan says, the Boeing Service Center, because there was no longer a quadro involved. You wouldn't have sent it to the quadro group. He had an obligation at that point to provide notice pursuant to the plan terms to the Boeing Service Center. They would have then known what the purpose of that was, that he was divorced, that the status of his dependents changed, and that his wife was now an ex-wife and no longer entitled to coverage. But he's suggesting that he put Boeing on notice, and that triggered a duty to investigate that his marital status was changing, or about to change, or had changed. And because we're talking about a motion to dismiss, he needs to make plausible allegations, right? So isn't that sufficient for him to plausibly allege that Boeing had this duty to investigate? No, because he tries to combine where he was supposed to provide notice, and it specifically says, it's titled repeatedly, the Boeing Service Center. Where he sent the quadro was to the, and it says right on the quadro where it's going to go, it's the quadro service center, and that makes sense. Because to your point, they have almost 200,000 employees in 65 countries. If we just had one input for everything, absolutely nothing would get done. So the quadro went to the people that handle the quadros. And it's very similar to the idea that the court talked about in Staropoli, that there, JPMorgan Chase, 300,000 employees, and that the idea that you can, they use the term hive mind, that providing some notice to one group or one individual puts the entire organization on notice is not plausible, it's not reasonable, and it doesn't impose those kind of duties under ERISA. Same thing here. So we're dealing with ERISA, and in some instances, ERISA imports state law. And I think under California law, we would look for substantial compliance. So I guess my question is, one, does California law apply to set that standard? And was this not substantial compliance? So this is a, this plan is, so the master plan is a self-funded plan. There's parts that are insured and parts that are not. I do not think that this would be substantial compliance, Your Honor, because again, the whole purpose of designating a particular entity, the Boeing service center, is so that it in fact gets to the right people, so that they could then make the indication that he was no longer entitled, his wife is no longer entitled to coverage. But here, the EBPC administrator, they were responsible for both retirement benefits and processing of quadros. The overall plan administrator was the same for the 401k plan as well as for the- So the divers started the quadro process by obtaining the quadro from this Boeing total access website, correct?  And then he filled it out and he sent it to the EBPC, who is the administrator of these types of benefits, but the care of Boeing Quadro Service Center. And just because there was this additional kind of filtering or funneling to the Boeing Quadro Service Center, does it erase the fact that the EBPC was made aware of this? Sure. No, Your Honor. I think that what we know is that the quadro folks were made aware of that. I don't think, again, this idea that notice to some group, you know, puts notice to everybody. I don't think- But it's the administrator. The administrator is being placed on notice. Isn't that basically what Judge Beatty is talking about in terms of substantial compliance? I'm sorry, Your Honor. They were being placed on notice that there was a quadro. And what the reason for that is, is they had to start effectuating the distribution of the 401k plan and separating it. It has a singular purpose. It wasn't there to advise of a divorce. And the other thing we know, so there was a whole eligibility process in the plan. If he really thought that put them on notice and that they should have either called him or if they should have stopped taking out premiums, he saw that the premiums were continuing to be taken out. There was a process that he calls the Boeing Service Center at that point, asks questions. If he wasn't satisfied, then you go through a formal claim process. And then there would actually be an appeal process. As Judge Carter said, he can't complain about the process being improper when he didn't engage it. He didn't engage it by properly following it with a quadro submission. And he didn't engage it undisputably by actually submitting when he was divorced, which even if there was a mistake previously, which we don't say there was, that would have remedied it. And we wouldn't be here if he had just followed those requirements. I mean, I understand your argument. And it's a perfectly logical argument. The pushback that I have, and I think maybe my colleagues have, is if you're giving a plan administrator notice of something that needs to happen that is traceable only to one event, which is a marital change, why does it make sense that the plan administrator can be like, well, I don't really know that there's a marital change. All I know is that you're trying to split this retirement account, when that's the only reason we split the retirement account. But as you've noted, if they would have taken that, so I guess arguably the idea is treat that as a divorce. And as Your Honors asked, should they have stopped withholding premiums at that point? If they did, we would hear about a different lawsuit if she had happened to die a few months earlier. Or it could be less than that. It could be instead of just stopping premiums automatically, it could be the quadro group informing the payroll group or whatever, hey, this is happening, it looks like there might be a marital status change, and maybe you should inquire, maybe you should do something about this. And that's where Stara Poli is instructed, because what happened there is the person told the HR person, I'm getting divorced. They actually changed the tax withholdings as a result of that. But then they let that individual still go ahead and have supplemental dependent life insurance. And the court said the idea that telling the HR person and even making a change in the system there, that didn't impose the kind of requirements and notice on the rest of the organization. I think that's the same situation here. I know my time is up. I'm happy to answer any further questions. Thank you very much. Thank you.  Mr. McMillan. Are you familiar with any case that allows eligibility or allows a plaintiff to recover based upon this idea of substantial compliance with notice requirements? I'm not, Your Honor. Thank you. But I think there was substantial compliance, and I think, you know, the point you were latching on to was... But that begs the question, what is the standard? Is it a standard that the person has to strictly comply with the notice, or is substantial compliance good enough? Well... And if you have, I'm sure you have a position, but do you have authority to support it? Well, you know, I don't right now. But I think that there was complete compliance because, I mean, they put them on notice. EBPC is the same plan administrator for both plans. The only... And it was through... The plan documents say Boeing Total Access. That's what he did. He submitted this through Boeing Total Access. The fact that he put EBPC in care of Quadro Service Center instead of Boeing Service Center, one word difference, I mean... But is it actually a different destination? No. It's through... The plan says give it through the Boeing Total Access website, and that's what he did. And the Boeing... Actually, the plan documents say that Boeing Total Access website is a direct connection with the Boeing Service Center. And that's what the plan said. That you have to submit it to Boeing Service Center through the Boeing Total Access website. So that's what he did. He mistakenly put, you know, or added the Quadro word in there, but it still said Boeing Quadro Service Center. So I think that there was compliance. I don't know the answer to the court's question about whether substantial compliance is good enough. So we're, I think, assuming in this analysis that Quadro would only occur in the... When there's a divorce. But that's not what happened here. Mr. McGriver had a Quadro order from the state court, and he wasn't divorced. He was legally separated. So are there instances where you can have a Quadro in anticipation of a divorce? You start splitting retirement funds, your 401k? And then maybe the parties reconcile, and they don't divorce. So he was in the process of divorce. They legally separated in April of 2019. June of 2019, he files a petition for divorce. September of 2019 is when the Quadro form is filed. And then the judgment of divorce wasn't final until January of 2020. I'm not an expert on Quadros or family law, but I'm assuming... I mean, you have to do it prior to the actual judgment being entered, I would assume. We have taken you over time. Do my colleagues have any more questions?  All right, thank you. Thank you. Counsel, thank you all for your arguments this morning. They were very helpful. And this case is submitted.
judges: BADE, FORREST, Curiel